That is Childress v. Experian. Mr. Palmer. Good morning, Your Honors, and may it please the Court. At the outset, I want to make it plain that it's our understanding that any issue regarding LexisNexis and the motions to maintain documents under seal on appeal moots the issue that we raise with respect to them from the District Court's order. If the Court has any questions about that, I'd be happy to answer those. Just to be clear, so you're okay with keeping this information under seal? Yes, Your Honor, because I believe this Court's standard review is much broader with respect to unsealing documents, and that if this Court says that they can be maintained under seal, then the District Court did not abuse its discretion. So the remainder of the issues involve Experian. There are two substantive issues, essentially, and one procedural issue. The substantive issues involve the Fair Credit Reporting Act, specifically 15 U.S.C. 1681c, which requires any credit reporting agency who reports a bankruptcy on a consumer's credit report to identify not only the chapter of the bankruptcy that's being filed, but also if the consumer withdraws the bankruptcy before a final judgment, and that's made known through a certified document to the credit reporting agency, that that must be reflected on the credit report. The second substantive issue under the Fair Credit Reporting Act is whether Experian's process is reasonable to assure maximum possible accuracy of the information contained in the report. Could you explain that statutory standard to me? Reasonable procedures for maximum possible accuracy sounds to me like a contradiction of terms. It sounds like something that Congress would write, Your Honor. I'm trying to imagine what our environmental laws would look like if we said, if Congress had said, an industry must use reasonable measures for maximum possible pollution reduction. We'd have no idea what that means. Your Honor, I believe it was the Koropoulos Court that used a balancing test to balance the potential harm to the consumer with the potential cost and inefficiencies to the credit reporting agency. Was what was reported inaccurate? What was reported was not inaccurate. It was incomplete and misleading, and it was also contrary to the statute. Mr. Palmer, is it correct that Plaintiff Childress claims only statutory damages? Correct, Your Honor. So unless you can come forward with evidence of a willful violation, she loses, correct? Correct, Your Honor. Okay. So is there any evidence that a credit reporting agency can tell reliably, reliably, and automatically, the information that you say should have been included? No, Your Honor, there is not evidence of that in the record as it is now. The evidence is that Lexis attempted at one point back in 2000 through 2005 to indicate on the file layout sheet whether it was an involuntary or voluntary dismissal. For whatever reason, Lexis determined that it was not reliable. And in fact, if that method were not reliable, it would pose a pretty serious risk of violating the Fair Credit Reporting Act, right? It would. So is it your contention then that a credit reporting agency has a legal duty to go through bankruptcy dockets by hand to evaluate whether each dismissal was voluntary or involuntary? No, Your Honor. I believe that the evidence isn't that that is the only possible way to do it. I'm sorry? It was 10 years ago when Lexis determined that what they were doing at that time was not reliable. Is there any evidence that it is feasible now to do this reliably and automatically? No, Your Honor, not specifically. So why don't you lose then? Because it's their burden to put forward evidence to establish that it cannot be done. The statute does not require to report a bankruptcy as being withdrawn if it's convenient. The statute does not require to report a bankruptcy as withdrawn if it is inexpensive to do so. If you get receipt of documentation certifying such withdrawal? Yes. And if manual examination of dockets doesn't sound like that? No, Your Honor. Okay. Can't the person, the bankrupt, can't he or she notify the consumer reporting agency that, I mean, you can get your consumer report, right? Yes. And if you notice that it says that it doesn't say withdrawn, says dismissed instead of withdrawn, can't you ask for a correction? You can, Your Honor. Why doesn't that take care of the problem? Because the burden is on the credit reporting agency at the beginning when it issues its report to make that determination and make that notation of it. I don't understand. They send the bankrupt the report, right? Yes, Your Honor. Well, why can't the bankrupt then say, well, you've made a mistake or your information is incomplete because this was withdrawn. And here's, you know, a Xerox of the bankruptcy judge's order, right? Wouldn't that take care of it? That would take care of it on the reinvestigation side of it. You're asking, I believe, a lot of consumers who go through bankruptcy to understand all the legal ramifications of everything that's in that credit report, whereas Congress has put the burden on the credit reporting agency to make that notation. Upon receipt of certification. Upon receipt of certification. And, Your Honor, since you've mentioned that twice, let me address that. The certification in these cases is Lexis warranting to Experian that all of the information that they provide through the PACER system is reliable and accurate. Well, okay, that goes back to my question, though. If it can't be done reliably and automatically, there's no evidence that it can be, and it's not reasonable to do it manually, then it's pretty hard to find a willful violation here, isn't it? The willful violation is with respect to not making the notation, not whether they exercise reasonable procedures. There are two different statutes there. The willful violation is of the failure to note the withdrawn aspect on the credit report. So you're saying there is then an obligation to go through every docket that results in a dismissal manually without being asked to determine whether the dismissal was voluntary or involuntary. No, Your Honor. I'm saying that it is the burden of Lexis and Experian to come up with sophisticated enough procedures. If they want to do this automatically. Okay, so there's a willful violation for failing to develop a technology that, as far as we know, does not exist. It is a willful violation to not follow the statute. What makes you think it's feasible? You can't accuse them of willfulness for not doing something that they can't do. Your Honor, they did it 10 years ago, 15 years ago. And the evidence is undisputed that it was not reliable, correct? The evidence is undisputed that Lexis did not consider it to be reliable. Lexis is not the credit reporting agency. As far as the evidence... Well, have you shown that it's feasible for Experian to determine whether a bankruptcy has been withdrawn? Automatically, automated? No, we have not established that. I don't know what you meant by that. I'm asking you whether it's feasible for them to do that. Yes, Your Honor, it is feasible if you want to go to Judge Hamilton's extreme of going through each one manually. Yes, it is feasible. Is it expensive? Very much so. But that isn't what the statute says. Well, what makes you think the statute is supposed to impose unlimited costs on a credit reporting agency? I believe the statute, at a minimum, requires attempts to comply with the statute, and there have been no attempts over the last 10 years, as evidenced in the record, to develop any kind of program that would comply with the statute. But we don't know whether it's possible to develop such a program. And we don't know that it's impossible today. Do you agree that the PACER system fails to differentiate between voluntary and involuntary dismissals? No, Your Honor, I don't agree with that. I agree that on the top of the docket page, it just says dismissed. However, if you read the individual docket entries, you can tell if the lawyer reads the docket entries, you can figure it out. If the lawyer reads it, or as Ms. Pascual testified in her deposition, she could read it and determine whether or not a consumer filed a motion to dismiss the bankruptcy. How many consumer reports does Experian publish every year? I would assume millions, Your Honor. What? I would assume millions. But your position is it doesn't matter how much it would cost them to achieve perfection in reporting withdrawals. No, Your Honor. It could bankrupt them, right? It could be billions of dollars. You don't care. No, Your Honor. It's our position that they have done nothing over the past 10 years. What do they have to do in order to comply? Well, I would assume that over the past 10 years that there has been additional sophistication in their... What do you mean you assume? Why don't you try to find out? Because that issue was not there before the motion for summary... No, your position is it doesn't matter what it costs them. They have to do it. They go broke, too bad. That's your position. Because you haven't made any effort to find out what is feasible and say, well, if it's feasible, they have to do it, which would be a perfectly reasonable position. But maybe it's not feasible. And the only evidence we have in the record, Your Honor, is that... Why don't you produce some evidence? Why don't you go look and find evidence? Because the evidence we had was that they tried it and then they determined... Well, why don't you hire some expert to advise you whether it is feasible to do what you think they have to do? And to go back to Your Honor's previous question and bankrupt the plaintiff again... I don't want you to go back to my previous question. I want you to answer my current question. Why don't you hire an expert to advise on the feasibility and what it would cost and so on? If we had had more of an opportunity to do so when that issue became apparent to us, when they filed their motion for summary judgment, we may have been able to do so. However, this is a... Well, didn't you say when they filed for summary judgment that this was a new issue you hadn't anticipated and you would need some time, you'd have to find an expert and so on? That could have been done, Your Honor. Did you ask for that? No, Your Honor, we did not. Could I go back a little bit? Please, Your Honor. Originally, the bankruptcy was filed because they didn't realize that you couldn't discharge student loans in bankruptcy. Correct, Your Honor. And so that was the only reason that their obligations exceeded their assets. Correct. And so they go and look it up or somebody tells them in a hurry that's not dischargeable. Correct. So they think that innocent mistake, if that's what it is, should not be blended with other people who filed for bankruptcy and for whatever reason, either dismiss it voluntarily when they find out they're up against it or something or they don't want that on their record or something, or it's been dismissed. Correct. And you want something to somehow separate them out for making a... just a mistake. Correct. And I guess they think that damages their reputation when they look at their credit report, just because somewhere along the line there was a bankruptcy and that's what you want to try to erase. Correct, Your Honor. And voluntarily would somehow erase that. Voluntary dismissal. Yes. It's our position that voluntary dismissal would be the same in the equivalent of withdrawing and under experience internal classifications, that is how they define withdrawing as a voluntary dismissal. But there can be all sorts of degrees of withdrawing, can't there? There can be. In this case it was a simple mistake on what is dischargeable, but there could be other cases with far different reasons for the consumer to withdraw the bankruptcy. However, that's what Congress has told the credit reporting agencies to do, that if it is withdrawn, to note that on their record. Why does anyone care whether it's withdrawn or dismissed without withdrawal? The point is you don't withdraw unless you file for bankruptcy. If you file for bankruptcy, well, that's something that banks are very interested in. They don't know why you withdrew it. Maybe they don't care. Maybe they don't care. Maybe they do care, Your Honor. Well, what's the evidence they do care? We have no evidence of that, Your Honor. You don't have any evidence at all of anything. Yes, Your Honor, we do. We have evidence that it was tried 10 years ago. They stopped doing it. They don't comply with the statute, and they've made no attempt to comply with the statute since that time. Is that lower the grade on the disclosure? I'm sorry, the report. Is there some – I have to say I've never looked at mine. I don't know what it says. But is there some numbers? People talk about numbers. You see it advertised on TV, oh, if you've got this number or something. Is there a number that is adjusted based on whether it's voluntary or not voluntary? I can't answer that question, Your Honor. There must be a reason for wanting it out of there. We know that Congress at least wanted to provide for the designation without amending the bankruptcy code to say what it meant by withdrawing. And just like, Your Honor, Congress made it clear that they wanted the credit agency report to reflect whether it's a Chapter 11 or a Chapter 13. That could have ramifications, too, as to whether you're seeking a total discharge of every debt you have or if you're continuing to try to pay off those debts. Thank you, Your Honor. Okay. Well, thank you very much, Mr. Palmer. Mr. Weers? Thank you, Your Honors. May it please the Court, Adam Weers, on behalf of the appellee Experian Information Solutions, Inc. I want to first just quickly address a couple of questions that I just heard that I think I have answers to. The first with regard to scoring, it's my understanding that it would not be scored. Scoring, what scorers, lenders, Fannie Mae, those folks care about is did you file bankruptcy? That's the pertinent issue. Well, I guess the reason I ask that is because we're spending a lot of time on something that it must have some kind of an impact. All they want to know is that you filed for one. I guess it would show if you did it two or three times. Right. If you filed for bankruptcy two or three times, that's going to adversely impact your score in a different way. So I wonder what one does, and this one by mistake. I think the answer may lie in what Judge Hamilton raised, which is while Congress thought that there was some perhaps importance to this, but I think when they crafted this statute, recognized what I heard counsel concede, which is that this is impossible to do on the front end. This is not something reported by PACER. It's not something that one can do in any kind of automated fashion, and no one has suggested otherwise. And Congress included a clause precisely for that reason that says, look, this obligation doesn't kick in unless and until you receive documentation certifying withdrawal. In that instance, Experian has procedures in place. So I was startled to hear Mr. Palmer say that we've never done anything to comply because what we do is when we receive documentation from the consumer, the one who would actually know about this, who has been behind the docket, who knows the inner workings of why things happened, when we receive that documentation, our procedures are in place to add a statement to the file to that effect. Where do we find that in the record? That's in our brief, in numerous places. Plaintiff's brief ignores that fact entirely. The district court relied on that in their holding, that our procedures comply with 1681CD1 because when we receive, and I can point you to the district court's page 11 of the district court's opinion, the court finds that Experian does comply with 1681CD1 with its current procedures of noting a consumer's records upon receiving additional documentation indicating that the petition was voluntarily dismissed and that therefore no violation occurred with respect to Ms. Childress. So the notion that we have no procedures to deal with this is frankly just false. We do, when we receive the information, we add the notation. Now honestly, it doesn't happen very frequently, but it does happen. And when it does happen, our procedures kick in. But I do want to focus today on two issues, and Your Honors hit on it right away. The first is this notion about Experian's procedures. The procedures here are fair and reasonable. The district court so found, and the evidence is ample to support that. But even more importantly, as Judge Hamilton noted, there's only willful claims here. This is a class action, so plaintiff can't allege negligence because that would destroy her ability to certify a class. So she alleges a willful violation. Well, the Safeco case of the Supreme Court sets a pretty high standard here. And it says that a violation of the FCRA cannot be a willful violation unless it is a violation of clearly established law or prior precedent. Well, plaintiffs admit in their briefing there's no law on this point. And so here Experian's operating in a vacuum, and it's reading the clause upon receipt of documentation certifying withdrawal to mean what it says, that we need to receive something from someone else, some additional documentation, which is precisely how the district court read it. Secondly, under Safeco, an objectively reasonable reading of the statute, even if ultimately held to be wrong, can't be a willful violation. And here you'd be pretty hard-pressed to argue that Experian's reading isn't at least objectively reasonable. Well, how do we know that? The district court said so. In fact, the district court said plaintiff's preferred reading was itself unreasonable. So in order for this court to come all the way around and find Experian's violations willful, it would essentially not only throw out the district court but say this was a clear abuse of discretion or some even further standard. So the statute, you've heard what it says. It says if a bankruptcy is withdrawn by the consumer prior to final judgment, the CRA, in this case Experian, shall include in the report that such case or filing was withdrawn upon receipt of documentation certifying withdrawal. Experian complies with this in several ways, each of which line up with this court's prior precedent and what Congress said. First, we've discussed this. When we receive documentation from the consumer, the district court called this additional documentation. We will add the notation. That's precisely what the statute calls for. That's precisely what we do. Secondly, on the front end, we report precisely what PACER reports. If PACER says that a bankruptcy was dismissed, we report it as dismissed. Plaintiff wants us to go beyond what PACER says and to enter the subjective and try to find out the reasonings for why the dismissal came about. But the record evidence is undisputed. That's impossible. It can't be done in an automated fashion. It would require a manual hand review, presumably by lawyers or at least paralegals, and even then it would be imprecise. And this court has stated time and again, including in the Henson case, most notably, that there's no obligation to go beyond the face of the judgment docket. You can rely on it for being accurate because if you have to go beyond the face, the costs are astronomical. Plaintiff would say, well, tough luck. Congress said you had to do this, so it doesn't matter how much it's going to cost. It doesn't even matter if it's impossible. But that's not what the statute says. The statute says you only have to do it upon receipt. How many of these reports do you experience issue in a year? It's a loaded question, and I'll try to answer it in a couple different ways. Well, consumer report is defined very broadly, and it includes any time there's anyone asked to see your credit. So when you get a letter in the mail, congratulations, you've been pre-approved. So if you count all of those, it's hundreds of millions. In terms of just how many consumers ask for a copy of their file disclosure, I don't know the answer to that. I can only assume it's well into the millions. How many consumer bankruptcies do you process into your database each year? Each year there's approximately a million bankruptcies. You basically try to cover the national database. Yes. Our database covers every person in the country over the age of 18, unless they have lived entirely off the grid, will have some information in their file. That's terrifying, but that's why we have the FCRA, right? Precisely. All right. So the district court found our procedures reasonable. Well, I want to add one more thing about the Henson case, because I think it adds additional support for our position here. The Henson case says not only are we entitled to rely on the public record, but that if there is something in the public record that the consumer wants us to know about, something in addition or something wrong, they need to come and tell us. Once they do that, we've got a new obligation that's kicked in. We think that lines up precisely with what this statutory provision requires. Once someone provides us something, yeah, now we have an obligation here, and we're going to follow that according to our procedures. So if someone sends in, you've got a withdrawal or dismissal, whichever it is that they want to get voluntary in there? Yeah, if someone writes in and says, hey, Experian, you're reporting my bankruptcy as dismissed, I actually voluntarily dismissed it. Here's the proof. And then that will appear somewhere in the report? I'm sorry? In the credit report, whatever they send out? Yes, we would add a notation, and the notation would say something to the effect of bankruptcy voluntarily dismissed or withdrawn at the request of consumer. So that would appear right there, and that does happen. That's how we comply with the statute. The final point I want to leave you with is, again, on this notion of willfulness. This Court has spoken on willfulness a few times and has recognized that it's a fairly high burden. In the Murray v. New Singular case in particular, this Court recognized under Safeco, if something is not a violation of clearly established law, it can't be a willful violation. No court has ever told us that this statute means what plaintiff says. The FTC has only spoken on it by saying, if a bankruptcy is dismissed, that fact shall be reported. So the FTC is saying we shall report dismissed. And so in that setting, even if Your Honors were to say, well, plaintiff's reading, maybe that's another reasonable reading, or maybe that's what Congress intended, that you need to come up with this impossible algorithm, then it still wouldn't be a willful violation because that would be the first time we're being told that. Unless Your Honors have any further questions, that's all I have. Okay, thank you very much, Mr. Weares. Mr. Palmer, anything further? Very briefly, Your Honor. Oh, no. Did you want to argue, too? No, Your Honor. May it please the Court, I'm Ronald Craker for the Bargain Interest and LexisNexis Risk Data Solution team. Since the column has admitted that the issue is good, I no longer have an interest. Okay. Thank you very much. Sorry. Thanks. Very quickly, Your Honor. Going back to the cost and what it would cost Experian, under the statute Experian does not have to report each of these bankruptcies. But if it does report them, it has to report under what chapter of the bankruptcy code they're filed, and if they're withdrawn. Now, the statute says, or a statute says, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy. Now, reasonable, doesn't that suggest that considerations of cost would play a role in deciding what their obligation was? Yes, Your Honor. There's no evidence in the record as to what it would cost. No, but you don't seem to acknowledge any obligation on your part as a plaintiff to put in evidence in support of your contention that they're being unreasonable. Don't you have the burden of proof? We have a burden of proof, Your Honor, but on summary judgment proceedings our burden does not kick in until they have established a lack of genuine issue material fact, and they have not done that. No, I don't think, no, you're not, that's not correct. You can't just, you can't just say, you can't just say that, well, we don't have any evidence, but on the other hand, the defendant has failed to prove that his position is correct. Isn't that what you're arguing? Yes, Your Honor. But that's not true. Under summary judgment proceedings, we have to respond to what they file. They didn't produce any evidence of what the cost would be, so we don't have any obligation to do their work for them to establish what those costs are. You surely don't doubt that the cost of compliance would be considerable. We don't doubt that at all, Your Honor. Pardon? We do not doubt that, no. If the cost would be considerable, why wouldn't that be a prima facie case of unreasonable procedures and place a burden on you of showing that they are reasonable? What you want would be reasonable. Quite honestly, Your Honor, because my opinion doesn't matter in a court of law. All that matters is the evidence. You have not produced the slightest bit of evidence, even though there is this obvious issue of reasonableness, and we know that they prepare millions of these reports, and we know that each of these reports would have to be read by a lawyer or paralegal to see what the basis for the dismissal was. Your Honor, I disagree with the last part of your statement because I don't think that it's obvious that it has to be read by a lawyer or a paralegal. That's what they have just said. You look at the docket entries on a bankruptcy docket, anyone can tell who filed the motion. Oh, come on. You can't be serious. Yes, I can, Your Honor. Anyone. Anyone. You can hire what? A high school sophomore or what? Anybody who can read English? To tell who filed the motion? Yes, Your Honor. Because the PACER docket entry shows not only who filed the motion as in the party, it also shows which attorney filed the motion. And all you have to do is cross-reference back to the first page to find out who the party was and who the attorney was. Thank you. Okay. Well, thank you very much, Mr. Palmer and Mr. Weers, and also Mr. Rather, who is denied his.